Maurice VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
(301) 444-4600
mac@mbvesq.com
*Special Counsel for Wendell Webster in*
*His Official Capacity as Chapter 7 Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-378-ELG |
| | ) | |
| BROUGHTON CONSTRUCTION | ) | (Chapter 7) |
| CO., LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WENDELL WEBSTER, in his official | ) | |
| capacity as chapter 7 trustee and as assignee | ) | Adv. Case No. _____ |
| of Industrial Bank and Nationwide | ) | |
| Mutual Insurance Company | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SQUARE FUNDING LLC | ) | |
| d/b/a SQUARE ADVANCE | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**COMPLAINT**

Comes now Wendell Webster in his official capacity as chapter 7 trustee (the "Trustee")

of the estate of Broughton Construction Co., LLC ("Broughton" or the "Debtor"), inclusive of his

standing as assignee of Industrial Bank ("Industrial") and Nationwide Mutual Insurance Company

("Nationwide") pursuant to that certain agreement of November 10, 2025, by and through

1

undersigned special counsel, pursuant to Federal Rule of Bankruptcy Procedure 7003 and Federal

Rule of Civil Procedure 3, and as and for his complaint against Square Funding LLC d/b/a Square

Advance ("Square" or the "Defendant") states as follows:

## Introduction

1.      In the two years immediately preceding the filing of a petition for bankruptcy relief,

the Debtor paid $1,121,066.20 to the Defendant, pursuant to a series of merchant cash advance

("MCA") transactions.

2.      The MCA transactions are each titularly sales of future receivables, in exchange for

upfront cash.

3.      If the MCA transactions are, in fact, actual sales of future receivables, each such

transaction (and every payment made thereupon) is a constructively fraudulent conveyance, being

a sale made at the time the Debtor was insolvent, with Broughton receiving well less than

reasonably equivalent value for the receivables putatively sold.

4.      If the MCA transactions are not, in fact, actual sales of future receivables, each such

transaction is a poorly-disguised usurious loan that, pursuant to New York law (which governs the

transaction, per the Defendant's own agreement), is both criminal in nature and wholly invalid.

5.      Under either eventuality, each payment made to the Defendant, by the Debtor,

constitutes a fraudulent conveyance and is thusly avoidable under both Title 11 of the United States

Code (the "Bankruptcy Code") and District of Columbia law.

6.      The Trustee thusly now brings suit to avoid $1,121,066.20 in fraudulent

conveyances, seeking a money judgment as against the Defendant in the same sum.

**Parties**

7. The Trustee is the chapter 7 trustee overseeing administration of the Debtor's estate. Pursuant to an agreement of November 10, 2025, as approved by the United States Bankruptcy Court for the District of Columbia on December 8, 2025, the Trustee is also the assignee of certain causes of action held by Industrial and Nationwide, against Square,

8. The Debtor is a limited liability company, formed pursuant to the laws of the District of Columbia on or about September 11, 2006, that filed a petition for chapter 7 relief, pursuant to Section 301 of the Bankruptcy Code, on or about December 15, 2023.

9. Square is a limited liability company, formed pursuant to the laws of the State of New Jersey on or about January 13, 2022, carrying on the business of entering into MCA agreements.

**Jurisdiction and Venue**

10. This Honorable Court enjoys jurisdiction over the instant proceeding pursuant to the allowances of Section 1334 of Title 28 of the United States Code, insofar as the causes of action set forth herein arise under Title 11 of the United States Code (the "Bankruptcy Code").

11. This Honorable Court further enjoys jurisdiction over the instant proceeding pursuant to the allowances of Section 1332 of Title 28 of the United States Code, insofar as this case is between citizens of different states and the amount in controversy exceeds Seventy Five Thousand Dollars and No Cents ($75,000.00).

12. Venue is properly laid in this Honorable Court pursuant to the allowances of Section 1409 of Title 28 of the United States Code insofar as the chapter 7 case of the Debtor is pending in this Honorable Court.

13.     To whatever extent this case may be brought in the United States District Court for the District of Columbia, on account of there existing diversity jurisdiction *sub judice*, this case is nonetheless properly referred to this Honorable Court pursuant to the allowances of DCt.LBR 5011-1(a).

## General Allegations

14.     On June 14, 2022, the Debtor and the Defendant entered into a Standard Merchant Cash Advance Agreement (the "June 2022 Agreement"), whereby the Debtor sold to the Defendant the sum of $699,500.00 in future receivables and the Defendant paid the Debtor the sum of $500,000.00 (less fees of $12,500.00).

15.     Pursuant to the June 2022 Agreement, the Defendant was given a *carte blanche* assignment of 25% of *all* the Debtor's future receivables, to be debited at the rate of $29,145.83 per calendar week, with said remittances to continue until such a time as the full sum of $699,500.00 was paid.

16.     The June 2022 Agreement is governed by the laws of the State of New York.

17.     If the June 2022 Agreement were a loan, the same would call for repayment of all principal plus interest of 39.9%, with said repayment coming over the course of 175 days and, ergo, inviting an annualized interest rate of 83.22%.

18.     The Debtor and the Defendant entered into a subsequent agreement on September 8, 2022 (the "September 2022 Agreement"), in substantially the same form as the June 2022 Agreement, pursuant to which the Debtor sold to the Defendant the sum of $775,000.00 in future receivables and the Defendant paid the Debtor the sum of $500,000.00 (less $362,250.04, which was presumably used to retire the obligations under the June 2022 Agreement, for which $262,312.47 had been paid to Square at the time the September 2022 Agreement was signed).

19.    Pursuant to the September 2022 Agreement, the Defendant was given a *carte blanche* assignment of 25% of *all* the Debtor's future receivables, to be debited at the rate of $32,312.50 per calendar week, with said remittances to continue until such a time as the full sum of $775,500.00 was paid.

20.    If the September 2022 Agreement were a loan, the same would call for repayment of all principal plus interest of 55%, with such repayment coming over the course of 98 days and, ergo, inviting an annualized interest rate of 204.85%.

21.    A third agreement was then entered into in December 2022 (the "December 22 Agreement"), with the Debtor this time selling $846,000.00 in future receivables, in exchange for a purchase price of $600,000.00, to be repaid through weekly remittances of $38,454.54 that were designed to represent 14% of the Debtor's future receivables.

22.    The December 2022 Agreement only resulted in a disbursement of $232,062.50 to the Debtor, with the remaining funds presumably being held back to retire the Debtor's obligations under the September 2022 Agreement (for which $420,062.50 in payments had been made by the time he December 2022 Agreement was signed).

23.    If the December 2022 Agreement were a loan, the same would call for repayment of all principal plus interest of 41%, with such repayment coming over the course of 91 days and, ergo, inviting an annualized interest rate of 164.45%.

24.    In total, the Defendant disbursed $857,312.46 to the Debtor, through these three agreements, over the course of less than six months.

25.    The Debtor, in turn, remitted $1,121,066.20 to the Defendant during a span of just under 300 days (not including the sums held back on the latter two agreements to retire prior obligations).

5

## Count I: Fraudulent Conveyance
### (11 U.S.C. § 548)

26.    The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

27.    The Debtor had financial liabilities that exceeded the Debtor's assets, on June 14, 2022, and was accordingly insolvent at the time the June 2022 Agreement was entered into.

28.    The Debtor was without the ability to pay its debts, as they came due, on June 14, 2022.

29.    Assuming, *arguendo*, the June 2022 Agreement was a *bona fide* sales agreement, the receipt of $500,000.00 (less $12,500.00 in fees), in exchange for the sale of $699,500.00 in future receivables, was made for markedly less than reasonably equivalent value.

30.    The Debtor had financial liabilities that exceeded the Debtor's assets, on September 8, 2022, and was accordingly insolvent at the time the September 2022 Agreement was entered into.

31.    The Debtor was without the ability to pay its debts, as they came due, on September 8, 2022.

32.    Assuming, *arguendo*, the September 2022 Agreement was a *bona fide* sales agreement, the receipt of $550,000.00 (less the $362,240.04 withheld at closing), in exchange for the sale of $775,500.00 in future receivables, was made for markedly less than reasonably equivalent value.

33.    The Debtor had liabilities that exceeded the Debtor's assets, on December 9, 2022, and was accordingly insolvent at the time the December 2022 Agreement was entered into.

34.    The Debtor was without the ability to pay its debts, as they came due, on December 9, 2022.

35.     Assuming, *arguendo*, the December 2022 Agreement was a *bona fide* sales agreement, the receipt of $600,000.00 (less the $355,437.59 withheld at closing), in exchange for the sale of $846,000.00 in future receivables, was made for markedly less than reasonably equivalent value.

36.     Between July 5, 2022 and April 27, 2023, the Debtor paid the Defendant $1,121,066.20 pursuant to the three aforesaid agreements.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the June 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) avoid the September 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (iii) avoid the December 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (iv) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $1,121,066.20; and (v) afford such other and further relief as may be just and proper.

### Count II: Fraudulent Conveyance
### (DC Code § 28-3105)

37.     The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

38.     The Debtor had financial liabilities that exceeded the Debtor's assets, on June 14, 2022, and was accordingly insolvent at the time the June 2022 Agreement was entered into.

39.     The Debtor was without the ability to pay its debts, as they came due, on June 14, 2022.

40.     Assuming, *arguendo*, the June 2022 Agreement was a *bona fide* sales agreement, the receipt of $500,000.00 (less $12,500.00 in fees), in exchange for the sale of $699,500.00 in future receivables, was made for markedly less than reasonably equivalent value.

41.     The Debtor had financial liabilities that exceeded the Debtor's assets, on September 8, 2022, and was accordingly insolvent at the time the September 2022 Agreement was entered into.

42.     The Debtor was without the ability to pay its debts, as they came due, on September 8, 2022.

43.     Assuming, *arguendo*, the September 2022 Agreement was a *bona fide* sales agreement, the receipt of $550,000.00 (less the $362,240.04 withheld at closing), in exchange for the sale of $775,500.00 in future receivables, was made for markedly less than reasonably equivalent value.

44.     The Debtor had liabilities that exceeded the Debtor's assets, on December 9, 2022, and was accordingly insolvent at the time the December 2022 Agreement was entered into.

45.     The Debtor was without the ability to pay its debts, as they came due, on December 9, 2022.

46.     Assuming, *arguendo*, the December 2022 Agreement was a *bona fide* sales agreement, the receipt of $600,000.00 (less the $355,437.59 withheld at closing), in exchange for the sale of $846,000.00 in future receivables, was made for markedly less than reasonably equivalent value.

47.     The Debtor was justly indebted to Industrial on June 14, 2022 and has remained justly indebted to Industrial at all times since (including on December 15, 2023, when the Debtor petitioned for chapter 7 relief).

48.     Between July 5, 2022 and April 27, 2023, the Debtor paid the Defendant $1,121,066.20 pursuant to the three aforesaid agreements.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the June 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Title 28 of the District of Columbia Code and Section 544 of the Bankruptcy Code; (ii) avoid the September 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Title 28 of the District of Columbia Code and Section 544 of the Bankruptcy Code; (iii) avoid the December 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Title 28 of the District of Columbia Code and Section 544 of the Bankruptcy Code; (iv) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $1,121,066.20; and (v) afford such other and further relief as may be just and proper

## Count III: Fraudulent Conveyance
### (11 U.S.C. § 548)

49.     The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

50.     In the alternative, if the agreements with the Defendant did not represent sales of future receivables, the agreements where each a loan agreement governed by the laws of the State of New York.

51.     Pursuant to Section 190.40 of the New York Penal Code, the criminal usury rate, in the State of New York is—and, at all times relevant, has been—25% per annum.

52.     The interest rate under the June 2022 Agreement is 83.22% per annum.

53.     The interest rate under the September 2022 Agreement is 204.85% per annum.

54.     The interest rate under the December 2022 Agreement is 164.45% per annum.

55.    As usurious loan agreements, each of the foregoing agreements is unenforceable and a nullity.

56.    The Debtor thusly made $1,121,066.20 in payments pursuant to unenforceable loan agreements that are nullities.

57.    The Debtor did not receive reasonably equivalent value for the subject payments, insofar as they were made pursuant to agreements that are nullities.

58.    The Debtor had financial liabilities that exceeded the Debtor's assets, from June 14, 2022 forward, and was accordingly insolvent at the time the foregoing agreements were entered into.

59.    The Debtor became further insolvent as a result of entering into each of the foregoing agreements.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) avoid the June 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (ii) avoid the September 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (iii) avoid the December 2022 Agreement, as well as all payments made thereunder, pursuant to the allowances of Section 548(a)(1)(B) of Title 11 of the United States Code; (iv) enter judgment in favor of the Trustee, and against the Defendant, in the sum of $1,121,066.20; and (v) afford such other and further relief as may be just and proper.

## Count IV – Conversion
### (District of Columbia Common Law)

60.    The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

10

61.     On or about May 31, 2017, Industrial filed a uniform commercial code financing statement (a "UCC Financing Statement"), against the Debtor, amongst the land records of the District of Columbia, asserting a lien over, *inter alia*, "All assets of Debtor wherever located, whether now owned or hereafter existing or hereafter acquired arising, together with all proceeds thereof. . ."

62.     Each and every payment collected by the Defendant, under the June 2022 Agreement, the September 2022 Agreement, and the December 2022 Agreement, was debited by the Defendant, from the bank account of the Defendant.

63.     If the aforesaid agreements were loans, each was unlawful in nature, being in contravention of the criminal usury laws of the State of New York.

64.     By directly debiting monies from the Debtor's bank account, the Defendant exercised dominion and control over said account.

65.     The funds within the Defendant's bank account, at the time of each of the foregoing payments being made, constituted the lawful collateral of Industrial.

66.     The taking of Industrial's collateral constituted a denial of Industrial's rights over the same collateral.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) enter judgment against the Defendant, and in favor of the Trustee, in the sum of $1,121,066.20; and (ii) afford such other and further relief as may be just and proper.

### Count V – Unjust Enrichment
### (District of Columbia Common Law)

67.     The Trustee repeats and realleges each and every foregoing paragraph, as though fully set forth herein.

68.     The Debtor paid $1,121,066.20 pursuant to the June 2022 Agreement, the September 2022 Agreement, and the December 2022 Agreement (excluding the monies withheld at closing of the latter two agreements to pay the balances of the former two agreements), with such payments constituting a legal benefit to the Defendant.

69.     The Defendant has retained the foregoing benefits, continuing to hold the monies paid over by the Debtor.

70.     It is inequitable for the Defendant to retain payments made pursuant to a series of agreements that provide for the Defendant to receive a return on investment—regardless of whether or not characterized as loans—at a rate of well in excess of 100% per annum.

71.     Specifically, the three agreements are either usurious loans that are nullities pursuant to their own choice of law provision or, alternatively, are so facially unconscionable as to offend notions of equity.

WHEREFORE, the Trustee respectfully prays this Honorable Court (i) enter judgment against the Defendant, and in favor of the Trustee, in the sum of $1,121,066.20; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

Respectfully submitted,

Dated: December 14, 2025

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Special Counsel to Wendell Webster*
*In His Official Capacity as*
*Chapter 7 Trustee*